Mr. Freifeld, is that you? Yes, this is Andrew Freifeld. Good afternoon, may it please the court. And let me just confirm, Mr. Trowell, you're still around? I am, your honor, yes. Okay, great. Yes, proceed, Mr. Freifeld. Thank you, your honor. We consider it a small success if most of today's oral argument focused solely on this court's decision in United States v. Rosa, decided this past April, four days after we filed our reply brief. Rosa is exactly on point, legally indistinguishable, and compels vacatur of the sentence of life imprisonment. The decision is the subject of the party's FRAP 28J letters and is reported at 957 F3rd 113. Plain error review applies to our claim that the sentence was procedurally unreasonable under 355 3C, just as it did in Rosa. Notably, we also claim a violation of 353 A, whereas Rosa apparently did not. The government makes two arguments in response to our subdivision C claim. The first is that there was no error for purposes of prong one of plain error review. That is, the government claims that the district court's statement of reasons in open court complied with 355 3C. The second argument the government proffers is that under prong three of plain error review, according to the government, Reyes is not entitled to relief based on the district court's alleged adoption of the PSR in its statement of reasons. Rosa answers both of these arguments in favor of Reyes. As to prong one, the government would have the court find that this judgment hangs by a thread, that three adjectives alone constitute adequate reasons for the sentence of life imprisonment. Horrendous, heinous, and personal. That's it. The court said nothing else. We maintain that these adjectives are nondescriptive, generic, and uninformative. Take the facts in Rosa. Defendant Baer committed wire fraud and aggravated identity theft. The sentences had to run consecutively. Assume for a moment that he was a defendant who was a trustee who stripped a disabled beneficiary of all of his assets. One could readily call that crime personal. One could readily call that crime horrendous. So I submit the words themselves don't amount to much. Even as to the adjective heinous, which the court used, Reyes had no criminal record and his guidelines range was 360 months to life. We think that there is no crime that is not heinous where defendant has no criminal record and is facing a guideline sentence of 360 months to life. Excuse me, Judge Newman. I don't understand what you just said at all. If the judge thinks that the criminal activity is heinous, as he obviously did, how is the use of that adjective in any way undercut by the absence of a prior record? Now, I did not mean that. Thank you for asking for the clarification. What I meant to say is that any person who has no criminal record who is facing a guideline sentence of 360 months to life, chances are that the crime was heinous. I don't think there's any crime that isn't heinous where a person is situated in that way. So that is the reason that I maintain that the word heinous is nondescriptive given the facts of the case. Or it's so descriptive that it always applies to that situation. That doesn't make it nondescriptive. That makes it precisely descriptive, perhaps inevitably descriptive. All right. But in any event, you agree it has nothing to do with the absence of a prior record. Yes. Whether, yes, a person with no record or a person with a very long record, each of them could commit a heinous crime. Okay. Thanks. And as to the personal element, the court was very clear. You know, in the example I just gave with the trustee and the beneficiary, I used the word personal. The way that the court here used the personal, the court said, quote, it wasn't a knife. It wasn't a gun. It was personal. The deceased was strangled. So the way that the court used the word personal spoke to the manner by which the deceased was murdered and nothing else. And I said that is not an appropriate consideration. Rosa also addresses the issue of whether under prong three of plain error review, uh, the statement of reasons that the court filed stays, uh, the save, uh, requires an affirmance, uh, because it was adopted by the, uh, district court. Rosa speaks to this directly. The government made the same exact argument with Rosa, and basically the court said, we've gone, we've scrutinized the statement of reasons. Nothing in here. There's so much here. That's incorrect. That while we're going to give a break that while we, let me, let me start again in situations where the court fails to comply with three, five, five, three C and doesn't provide adequate reasons for purposes of the statute. Sometimes affirmance can occur. Nevertheless, because under plain error review, because the court has adopted, uh, the statement of the court has adopted the PSR in the statement of reasons. So this court gives the district court one break and says to them, if you go, if you adopt the statement of reasons, we'll give a break and not having, uh, uh, complied with three, five, five, three C. However, we're going to scrutinize the statement of reasons to see that it was done properly to ensure that it's an adequate backup or an adequate substitute or the actual, um, for the actual reasons, uh, in open court. And in Rosa, the court found four different things that were wrong with the statement of reasons. So as to preclude its use as the government had urged here. Also, we identify in our reply brief, uh, for, uh, uh, four things that were wrong with the district court statement of reasons, uh, which should preclude this court from using it, uh, as an adequate substitute for the statement of reasons in open court, uh, at sentencing. Most importantly, uh, the, the, the scenic one of the government's argument, uh, under these circumstances is that the statement of reasons specifically adopts the, uh, the, the PSR. If you look at the statement of reasons filed by judge Johnson here, he checked the box that said that, uh, there were going to be changes to the PSR. So the government's argument rests on a false premise that, um, that the district court actually adopted the, uh, the, uh, PSR, uh, and it's SO. Uh, and I would also, uh, add that, um, in so far as the reasons that the court in Rosa determines that the, uh, SOR, uh, is, is, is, is inadequate or, um, they include that the SOR made a mistake in restitution and that had absolute. Yes. You have a minute left. Thank you. Uh, and so there was an error there as to restitution. So the court here is really scrutinizing the statement of reasons to determine that, um, to determine whether it's worthy of acting as a substitute for something so important as, uh, the statement of reasons, uh, uh, in open court. And, uh, we give three other examples of how the statement of reasons, uh, here is, uh, has all these errors in it. Uh, if you have no other questions at this time, I'll, uh, I'll reserve my time, please. Thank you, Mr. Charles. Thank you very much, Your Honor. May it please the court, Kevin Trial for the United States. Uh, I think we agree, I agree with my adversary that Rosa's is particularly instructive, although I disagree with him that it's controlling. I think Rosa makes clear that in that case, the court explained and the briefing confirms that the district court gave no reasons whatsoever. The district court simply said, I consider the 3553A factors and, uh, entered a sentence. And that is not the case that we have here. Even as, as, as my adversary mentioned a moment ago, he started by saying there were three words, or maybe he was being more specific that there were three adjectives, but, but then he noted in his argument, the court was focused on the nature, the, the means by which the murder was committed. I submit to you that there's no reason the court is precluded from considering that. And in fact, it's a highly relevant, uh, highly relevant fact under 3553A that goes beyond the three simple words that he suggested the district court used. The government's position as, and I think this is, uh, supported by Rosa is that 3553C imposes a low threshold and where the issues as they were here, particularly on remand, having resolved, uh, most, or, or in fact, all of the outstanding issues in the first appeal on remand, there was very little to do. District, uh, Judge Johnson was, was found the crime to be heinous, personal, horrendous, and imposed a sentence that, that reflected that. And I, I'll just note, um, for your honors that in guideline 2A1.1 for first degree murder, which was the guideline that applied here in light of Mr. Reyes's, um, uh, concession in his plea agreement that it was premeditated. The guideline application note 2A says in the case of premeditated killing, life imprisonment is the appropriate sentence if a sentence of death is not imposed. That's not, it's obviously not binding on anyone. The government doesn't intend to suggest that, but it's to re it reflects the sense that for a crime of this type, regardless of the individual's criminal history, I, I don't see that having any effect whatsoever here, given the nature of this crime that we're starting from that premise. And the district court was properly, uh, uh, found the crime to be heinous, horrendous, and personal, and imposed a sentence that simply rejected the arguments that the defendant made, uh, and, and, and was re, you know, was reasonable under the circumstances to the extent he raises that argument. As for the Mr. Trowell, this is Judge Hall. So just help marshal, I guess, for me, just so I'm clear on the government's position, what it was that Judge Johnson took into account in determining that uh, not to impose a 360 month sentence, which could, could be a life sentence in this case anyway, right? Um, between that and life imprisonment. Well, I think your honor that there are two issues in there and, and I think Rosa fleshes them out a little bit, balance separating 3553A and 3553C. So in terms of what the court considered, as the court explained in Rosa, typically saying, I've considered your arguments, 3553A factors, that usually does the trick. And so here, I think what you can glean from the record, what is not glean, you can, what is clear from the record is that the district court heard, understood, and, and considered all of the arguments made by the parties. And during the course of the sentencing, the court refers back to some of the calls about the obstruction of justice calls that, um, that the defendant was captured on showing both that he was engaging with the arguments and that he was aware of, of those issues. So I don't think there's any question he considered those things. He just, and, and nor is there any case law that I'm aware of in the court that suggests he needed to go point by point and refute them. He heard them, he considered them, and he simply rejected them and said, in light of the heinous nature of the personal nature of this crime, a life sentence is appropriate. So I think separating the 3553A from the 3553C analysis, I think is, as Rosa does, I think is helpful in, in noting that the court, as, as the court put it in, in Rosa, the court identified the consideration that drove the selection of the sentence. And that was the horrific nature of this crime. It's not, that's not complicated, but this is not a complicated case. It's very straightforward. The arguments presented were straightforward and the court simply concluded that in light of those facts, life was appropriate. And that's sufficient for appellate review? I think, I mean, as I read Rosa, Your Honor, I think what Rosa is saying is we have here a case that where the district court said nothing, that's plainly insufficient. I'm not suggesting that Rosa held that anything above nothing is sufficient. So maybe there are some narrow band of cases where it's more than nothing, but less than what's sufficient under 3553C. But here, where, where the case, this is not a complex fraud. This is not a case where a life sentence would even be, I submit sort of unexpected or surprise. The guidelines say that that would be the sentence, the very sentence that the previous judge gave. Correct. He's the second judge to have imposed that sentence. And, and, and so I think under the circumstances and, and in all of these cases, what the court is considering is the, the totality of the circumstances, what, what, what was going on in the court at the time, judging the explanation against that, it was clear what drove this. It is a horrific crime. The court found it was and imposed a sentence in light of that. And, and Mr. Trowell, is it any part of the government's argument? I don't, I don't recall you mentioning it, but maybe I missed it. That this is a plain error case, right? No one asked the judge in the district court to give a further explanation of the sentence. That's correct, Your Honor. Which of course it would have been very easy to do. And if it had been done, presumably the judge would have either failed somehow or given bad reasons or would have elaborated to whatever degree that was pursued. I mean, what concerns me about the, the failure to explain argument as, as plain error is that where, at least as you've been arguing here, the reasons why a judge would be at least considering the possibility of a light sentence are fairly obvious. The sort of opportunity to just let it slide and, or even the defense counsel making a decision, there's no point in asking for reasons because all you're going to get is buried with a further explanation of how horrendous the and then you get a sort of free appellate shot because you quibble with how much the, the judge said or didn't say. So at least to me, the, the plain error issue is meaningful. If the judge, I'm not going to tell you anything more after someone objected, we'd have a very different case, wouldn't we? I, I agree, Your Honor. It sort of opens the opportunity for, you know, Mr. Reyes's lawyers have asked for remand to a different judge, which I think the point that you're making, Your Honor, makes clear that that would be wholly inappropriate. There was nothing improper about what the judge did here. And in fact, the failure to request a further explanation suggests that to those in the room, the explanation was sufficient. Thank you, Your Honors. Unless there are any further questions, we'll, we'll rest on our brief. Thank you, Mr. Trowell. Thank you. Mr. Freyfield, you reserved two minutes for, for rebuttal. Yes, thank you. Rosa, Rosa is a plain error case. Also, the government is as capable as telling the district court that perhaps its reasons aren't adequate as a defense counsel is at sentencing as well. This argument about an application note, it wasn't argued below. It wasn't argued in the briefs where a murder is, where, where a life sentence is proper. I have no idea. I've never seen that note offhand, not having had any notice that it was going to be argued here today. I note that it's true that the previous judge imposed a life sentence. However, the guidelines range, as Judge Towns found, was a life sentence, whereas the guidelines range here was 360 months to life. I don't know of an intentional murder that's not heinous. As I argued in my brief, I think it's an insult to families of murder victims that use of, that strangling is more heinous than, than a gunshot or a knife. And that's exactly what the under plain error review is. How will the permits affect the reputation of the judiciary? And under the second prong of the court should be assigned upon remand. The issue is to preserve the appearance of justice. I submit that public confidence in the judiciary is undermined. Anytime a discretionary sentence is imposed, a discretionary sentence of life is imposed with nary a word said by the district court. Thank you, Ronis. Thank you, Mr. Freyfeld. We will reserve decision in this case.